**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**MICRO MAN DISTRIBUTORS, INC.,**

      **Plaintiff,**

**vs.**                                     **Case No. 8:13-cv-00639-T-27MAP**

**LOUIS GLUNZ BEER, INC.,**

      **Defendant.**

_____/

## ORDER

    **BEFORE THE COURT** are Plaintiff's Motion for Partial Summary Judgment (Dkt. 39), Louis Glunz Beer, Inc.'s Motion for Summary Judgment (Dkt. 49), and the corresponding responses (Dkts. 44, 56). Upon consideration, genuine issues of fact remain as to the reasonableness of Plaintiff's distribution efforts and whether Defendant's termination of the franchise was made in good faith. The motions (Dkts. 39, 49) are therefore DENIED.

**I.    INTRODUCTION**

    On February 20, 2013, Defendant Louis Glunz Beer, Inc. terminated the exclusive beer distribution franchise for the state of Florida assigned to Plaintiff Micro Man Distributors, Inc. (Dkt. 1-11). Micro Man sued, alleging a violation of § 563.022, *Florida Statutes*, which governs the relationships between beer distributors and beer importers. The parties' actions and claims must be understood within the context of § 563.022. The statute is therefore reviewed first, and then the undisputed facts giving rise to this lawsuit are described.

1

A.    **The Statutory Scheme**

Because they can sell directly to consumers only in limited circumstances, importers and manufacturers of beer must assign distributors for their products. Distributors are entitled to an exclusive sales territory for each product imported. § 563.021(1), Fla. Stat. The exclusive sales territory "shall be embodied in a formal written agreement," which must designate the brands for which the territory is granted and the exact geographical boundaries of the territory. *Id.*

The Florida Legislature strictly regulates the relationship between importers and distributors of beer. *See generally* § 563.022, Fla. Stat. Section 563.022, *Florida Statutes*, is designed to accomplish three goals: (1) ensure the distributor "is free to manage its business enterprise"; (2) ensure the distributor will "devote reasonable efforts and resources to sales and distribution" of an importer's products and maintain a "satisfactory" sales level; and (3) establish and maintain an orderly system of beer distribution to the public. § 563.022(1)(b).

Section 563.022(4) proscribes "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of the manufacturing, importing, distribution, sale, wholesaling, and franchising of beer." Section 563.022(5) further elucidates subsection (4) by setting forth sixteen unfair acts, including one relevant to this case:

> (b) It shall be deemed a violation of subsection (4) for a manufacturer or officer, agent, or other representative thereof:
> . . . .
> 4. To terminate, cancel, fail to renew, or refuse to continue the franchise or selling agreement of any such distributor without good cause as defined in subsections (7) and (10). . . .

§ 563.022(5), Fla. Stat.

Notwithstanding subsection (5), importers are permitted to cancel an exclusive territorial franchise in limited circumstances. § 563.022(6). To cancel a franchise, the importer must comply

2

with three requirements: (a) it must give notice as required by subsection (9); (b) it must act in good faith; and (c) it must have "good cause" for the termination. § 563.022(6)(a)-(c). The latter two requirements are at issue in this case.

What constitutes "good faith" is defined by the distributorship statute. Good faith means "honesty in fact in the conduct or transaction concerned as defined and interpreted under s. 671.201(20)." § 563.022(2)(g). In turn, § 671.201(20), *Florida Statutes*, defines good faith as "honesty in fact and the observance of reasonable commercial standards of fair dealing."

The "good cause" requirement of subsection (6)(c) is also defined by the statute. Good cause for cancellation of an exclusive territorial franchise exists only if *all* of the following events occur:

> (a) There is a failure by the distributor to comply with a provision of the agreement which is both reasonable and of material significance to the business relationship between the distributor and the manufacturer.
>
> (b) The [importer] first acquired knowledge of the failure described in paragraph (a) not more than 18 months before the date notification was given pursuant to subsection (6).
>
> (c) The distributor was given written notice by the manufacturer of failure to comply with the agreement.
>
> (d) The distributor was afforded a reasonable opportunity to assert good faith efforts to comply with the agreement within the time limits provided for in paragraph (e).
>
> (e) the distributor has been afforded 30 days in which to submit a plan of corrective action to comply with the agreement and an additional 90 days to cure such noncompliance in accordance with the plan . . . .

§ 563.022(7). If the franchise is terminated, the importer has the burden of proving it acted in good faith, that it complied with the notice requirements of subsection (9), and that there was good cause for cancellation of the franchise. § 563.022(8).

Section 563.022(12) requires distributors to devote "such efforts and resources" as required in the agreement between the distributor and importer to sales and distribution, as long as the

requirements are reasonable. Although most of § 563.022 appears to refer to written agreements between parties (indeed, §§ 563.021 and 563.022(19) require a written agreement between the importer and distributor), subsection (12) also provides that in the absence of a written agreement, the distributor "shall devote reasonable efforts and resources" to distribution and sales. § 563.022(12).

A person injured by any action forbidden by § 563.022 is entitled to bring a lawsuit to recover "the damages sustained" as well as costs and a reasonable attorney's fee. § 563.022(18)(c). Parties are entitled to injunctive and declaratory relief, if requested. And punitive damages may be awarded if the finder of fact determines that the defendant acted maliciously. § 563.022(18)(f).

### B.    Factual Background of this Dispute

Glunz Beer imports Stiegl, a beer manufactured by the Stiegl Brewery in Austria. In 1988, Stiegl Brewery appointed Glunz Beer as the exclusive importer and "master distributor" of Stiegl for the United States. Dkt. 12-1 ¶ 8. The relationship between Glunz Beer and Micro Man began in 2002, when Glunz Beer appointed Micro Man as its exclusive distributor for Florida. *Id.* ¶ 10; Dkt. 1-1. In 2009, a distributor known as Spaten North America was granted the exclusive rights to import Stiegl into Florida.[1] *See* Dkt. 12-1 ¶ 11. Spaten continued to use Micro Man as its exclusive Florida distributor. *Id.* On April 15, 2012, Glunz Beer reacquired from Spaten the right to import Stiegl into Florida, and it once again elected to use Micro Man as the exclusive Florida distributor. *Id.* ¶ 14. At no time did Glunz Beer and Micro Man execute a written document embodying the terms of their relationship or agreement.

---

[1] It is unclear whether Spaten was granted the importing rights directly by Stiegl Brewery or Stiegl Brewery asked Glunz Beer to concede part of its importing territory, including Florida, to Spaten. For the purposes of the cross-motions for summary judgment, however, this fact is not material. The only material fact is that Spaten obtained the right to import Stiegl into Florida in 2009 and relinquished it to Glunz Beer in 2012.

On May 1, 2012, John P. Glunz Jr., the General Manager of Glunz Beer, and Roger Thompson, the Mid-South Region Manger for Glunz Beer whose territory included Florida, met with Ian McCarthy, the President of Micro Man. Dkt. 12-2 ¶ 6. Although the details of that meeting are in dispute, the parties agree that Thompson discovered that Micro Man could not distribute to the entire state and that Micro Man had no sales representatives in the Florida Panhandle or the Florida Keys. *Id.* ¶ 7.[2] The parties also agree that Thompson asked McCarthy to prioritize distribution to the Florida Keys, and that McCarthy refused. *Id.* ¶ 12. According to Thompson, he expressly informed McCarthy that less than full coverage of the State was unacceptable for a distributor with an exclusive distribution franchise for the entire state. *Id.*¶ 15.

On November 1, 2012, Thompson held a follow-up meeting with McCarthy. *Id.* ¶ 16. At the time of the meeting, Micro Man still had no sales representatives "regularly calling on retailers in the Keys and the Panhandle." *Id.* ¶ 17. At the meeting, Thompson presented McCarthy with sales figures demonstrating Micro Man's lackluster performance in relation to other sales territories. *Id.* ¶ 18. Thompson also raised the issue of distributing Stiegl to Publix, the largest chain of grocery stores in Florida. According to Thompson, it was "necessary" that Stiegl be sold through Publix to expand its market. *Id.* ¶¶ 20, 23. McCarthy disagreed and "flatly refused" to regularly service Publix stores, stating that it was not profitable to call on or service Publix. *Id.* ¶¶ 21, 24.

After the meeting, Thompson proposed that the Florida market be divided into separate territories, such that Micro Man would retain the Tampa/St. Petersburg market where it had strong sales coverage, and Glunz Beer would buy back the distribution rights for the Panhandle and

---

[2]Although Thompson learned of this fact for the first time at the May meeting, Jerry Glunz testified that he had been aware since 2002 that Micro Man did not have a sales presence in the Panhandle and the Keys. Dkt. 39-2 at 160:21-161:9.

southern Florida, including the Keys. *Id.* ¶ 26. Glunz Beer also offered to buy back Micro Man's distribution rights for the entire state. Dkt. 12-1 ¶ 24. Micro Man refused both offers. *Id.* ¶ 24; Dkt. 12-2 ¶ 29.

As a result of the perceived deficiencies in Micro Man's servicing of the Florida territory, Glunz Beer sent to Micro Man via fax and certified mail a statutory notice of deficiency dated December 12, 2012. Dkt. 1-6; *see* § 563.022(9). The letter specifically identified three deficiencies. First, Micro Man's failure to provide sales coverage throughout Florida, including a failure to place sales representatives in the Panhandle or the Keys. Second, Micro Man's refusal to call on Publix. And third, an alleged failure to pay invoices in a timely manner.[3] Dkt. 1-6 at 3. The letter afforded Micro Man 30 days to submit a written plan of corrective action pursuant to § 563.022(7). Dkt. 1-6 at 3-4. Finally, Glunz Beer informed Micro Man that it would have 90 days to cure the three identified deficiencies or its exclusive distribution franchise for Florida would be terminated. Dkt. 1-6 at 4.

Micro Man did not submit a corrective plan of action, and Glunz Beer alleges that the deficiencies with regard to Publix and sales coverage of the Panhandle and the Keys persisted, although Micro Man began servicing the World of Beer chain of bars in the Keys in February 2013. Dkt. 39-6 at 64:18-24. In any event, Glunz Beer terminated Micro Man's franchise in a letter dated February 20, 2013, pursuant to § 563.022(9), which identified the reason for termination as Micro Man's failure "to establish a sales presence throughout the State of Florida consistent with its representations in May, 2012 and January 2013" and its failure to prepare a corrective plan of action. Dkt. 1-11. Although the effective date of termination was identified in the letter as May 28, 2013,

---

[3]The parties no longer dispute whether Micro Man paid its invoices in a timely manner, and this is not an issue addressed in the parties's cross-motions for summary judgment.

Glunz Beer stayed the deadline pending an order on Micro Man's motion for preliminary injunction. *See* Dkt. 10. When the motion was denied (Dkt. 22), Glunz Beer terminated the franchise effective July 19, 2013.

Soon after receiving the February 20, 2013 termination letter, Micro Man filed this lawsuit (Dkt. 1). Micro Man's complaint seeks a declaration that Glunz Beer's termination of the franchise was not made in good faith, that Glunz Beer lacked the requisite "good cause" for terminating the franchise, and that Glunz Beer's December 12, 2012 notice of deficiency did not comply with the statutory requirements of § 563.022(9). Micro Man also seeks an injunction prohibiting Glunz Beer from terminating its franchise, along with monetary damages, costs, and attorney's fees. Glunz Beer filed a Counterclaim seeking declarations that Micro Man's franchise was terminated in compliance with Florida law, and that Glunz Beer is entitled to appoint a new distributor for Stiegl in Florida without incurring liability to Micro Man. Glunz Beer also seeks a reasonable attorney's fee under § 563.022(18)(c).

Both sides filed motions for summary judgment. In Micro Man's motion for partial summary judgment, it argues that summary judgment is appropriate on the question of "good cause" because Glunz Beer terminated the franchise for deficiencies that were not provisions of the franchise, and because Glunz Beer knew about the deficiencies more than 18 months before providing notification to Micro Man. Dkt. 39. Glunz Beer's motion for summary judgment argues that § 563.022 imposes an obligation on the distributor to use commercially reasonable efforts to sell beer throughout its entire exclusive territory and to use due diligence and reasonable efforts in the expansion of the market and promotion of the product, even in the absence of a specific written agreement between the supplier and distributor. Glunz Beer further contends that if such obligations are imposed through

7

§ 563.022, that Micro Man's alleged deficiencies constituted "good cause" for terminating the franchise, that Glunz Beer acted in good faith as a matter of law, and that Glunz Beer is entitled to partial summary judgment on its Counterclaim.

## II.   STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is material if it may affect the outcome of the suit under the governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine disputes of material fact that should be decided at trial. *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party fails to demonstrate the absence of a genuine dispute, the motion should be denied. *Kernel Records*, 694 F.3d at 1300 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606-08 (11th Cir. 1991)). Once the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial. *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010). The nonmoving party must "go beyond the pleadings," and designate specific facts showing that there is a genuine dispute. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). A mere scintilla of evidence in the

8

form of conclusory allegations, legal conclusions, or evidence that is merely colorable or not significantly probative of a disputed fact cannot satisfy a party's burden. *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991); *Kernel Records*, 694 F.3d at 1301.

The evidence presented must be viewed in the light most favorable to the nonmoving party. *Ross v. Jefferson Cnty. Dep't of Health*, 701 F.3d 655, 658 (11th Cir. 2012). If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003). "Although all justifiable inferences are to be drawn in favor of the nonmoving party," *Baldwin Cnty. v. Purcell*, 971 F.2d 1558, 1563-64 (11th Cir. 1992), "inferences based upon speculation are not reasonable." *Marshall v. City of Cape Coral*, 797 F.2d 1555, 1559 (11th Cir. 1986). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine dispute over a material fact, the court should not grant summary judgment. *Samples ex rel. Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1998). However, if the nonmovant's response consists of nothing more than a repetition of conclusional allegations, summary judgment is not only proper, but required. *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981), *cert. denied*, 456 U.S. 1010 (1982).

III.   **DISCUSSION**

A.   **Micro Man's Motion for Partial Summary Judgment**

Micro Man argues that it is entitled to summary judgment on Count II[4] for two reasons: (1) Glunz Beer terminated the franchise for deficiencies that were not provisions of the agreement between the parties, in violation of § 563.022(7)(a); and (2) Glunz Beer knew of the deficiencies

---

[4]Count II seeks a declaration that termination of the franchise was without "good cause."

resulting in termination more than 18 months prior to the December 12, 2012 statutory notification, and therefore did not have "good cause" under § 563.022(7)(b) to terminate the franchise. Each argument is addressed in turn.[5]

### 1.    Good Cause under § 563.022(7)(a).

Section 563.022(6)(c) provides that an importer may not terminate a franchise agreement without "good cause for the cancellation." Five elements must be met to establish good cause, the first of which is "a failure by the distributor to comply with a provision of the agreement which is both reasonable and of material significance to the business relationship between the distributor and the manufacturer." § 563.022(7)(a).

Glunz Beer identified Micro Man's failure to provide sales coverage for the entire state and Micro Man's refusal to sell to Publix as the reasons for terminating of Micro Man's franchise. Micro Man contends that these reasons do not satisfy § 563.022(7)(a) because the deficiencies were not embodied as "provision[s] of the agreement" between Micro Man and Glunz Beer. Glunz Beer

---

[5]The parties agree that Florida's codification of Article 2 of the Uniform Commercial Code applies to franchises. No opinion is expressed on this issue and it is assumed that the parties are correct. *Accord Varisco v. Oroweat Food Co. (Matter of Varisco)*, 16 B.R. 634, 638 (Bankr. M.D. Fla. 1981) (recognizing that courts "uniformly" hold that franchise agreements are subject to the provisions of Article 2).

Where the more general provisions of the UCC conflict with § 563.022, however, the terms of § 563.022 prevail because it was specifically drafted to regulate the relationships between importers and distributors of beers. *See EC Term of Years Trust v. United States*, 550 U.S. 429, 433 (2007) ("In a variety of contexts the Court has held that a precisely drawn, detailed statute pre-empts more general remedies.") (quoting *Brown v. GSA*, 425 U.S. 820, 934 (1976)); *State ex rel. Johnson v. Vizzini*, 227 So. 2d 205, 207 (Fla. 1969) ("Where a general act and a special act conflict, the latter prevails."); *Harley v. Bd. of Pub. Instruction of Duval Cnty.*, 103 So. 2d 111, 112 (Fla. 1958) ("[A] special grant of power or a special act of the legislature takes precedence over a general grant or law on the same subject.") (quoting *City of St. Petersburg v. Carter*, 39 So. 2d 804, 806 (Fla. 1949)). *See also* § 563.022(1)(c) ("This section shall govern all relations between manufacturers and their distributors to the full extent consistent with the constitutions and laws of this state and the United States."). For example, the "best efforts" requirement of § 672.306 conflicts with § 563.022(12), which requires only "reasonable" effort. That provision of § 672.306 is therefore preempted by § 563.022(12).

The parties have not addressed whether, assuming Article 2 of the UCC applies, their relationship satisfies the Statute of Frauds. *See* § 672.201(1), Fla. Stat. Neither party has raised or pleaded the issue, and it is therefore waived. *See Automated Med. Labs., Inc. v. Armour Pharm. Co.*, 629 F.2d 1118, 1122 (5th Cir. 1980) ("Invoking the statute of frauds is an affirmative defense which must be specifically pled."). *See also Microman Distribs., Inc. v. Amtec Int'l of N.Y. Corp.*, No. 8:10-cv-1937-T-26MAP, 2010 WL 5137599 (M.D. Fla. Dec. 10, 2010) (holding that § 563.022 supersedes the Statute of Frauds and the writing requirement of § 563.021, Fla. Stat.).

responds that Micro Man was statutorily required by § 563.022 to establish a sales presence throughout Florida and to sell to Publix as "reasonable efforts" in selling Stiegl. The issue, as framed by Glunz Beer, is "whether Micro Man's refusal to work with Glunz Beer to increase its sales representative coverage was reasonable." Dkt. 44 at 12.[6]

Notwithstanding Micro Man's arguments about the application of the UCC's course of performance and course of dealing provisions to fill gaps in the franchise, Glunz Beer is correct that Micro Man was required to devote "reasonable efforts and resources" to the sales and distribution of Stiegl. § 563.022(12). The question then becomes how to read the "good cause" provision of subsection (7)(a) harmoniously with the "reasonable efforts and resources" provision of subsection (12), where there is no written agreement. *See Larimore v. State*, 2 So. 3d 101, 106 (Fla. 2008) ("[A] 'statute should be interpreted to give effect to every clause in it, and to accord meaning and harmony to all of its parts.'") (quoting *Jones v. ETS of New Orleans, Inc.*, 793 So. 2d 912, 914-15 (Fla. 2001)). When there is no written agreement, subsection (12)'s requirement of "reasonable efforts and resources" must be read as a "provision of the agreement" under subsection (7)(a), a breach of which could yield good cause for termination of the franchise under § 563.022(7)(a).

Any other reading of the statute would bring about an absurd result. If distributors could define all aspects of a franchise without a written agreement by invoking the UCC and ignoring the "reasonable efforts and resources" standard, then the final clause of subsection (12) would be superfluous. Words and provisions in statutes are not to be construed as superfluous if an otherwise reasonable construction exists. *State v. Bolden*, 877 So. 2d 680, 686 (Fla. 2004). *See also State v.*

---

[6]It is not clear whether subsection (6), and therefore subsection (7), applies to the termination of a franchise where, as here, no written agreement exists. The parties assume it does, and therefore no opinion is expressed on the question.

*Goode*, 830 So. 2d 817, 824 (Fla. 2002) ("[A] basic rule of statutory construction provides that the Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless."). A reasonable construction is that the "reasonable efforts and resources" obligation is a statutory "provision of the agreement which is both reasonable and of material significance to the business relationship." § 563.022(7)(a). Otherwise, there would be no use for this part of subsection (12). Accepting Micro Man's argument that there was no good cause merely because selling to Publix and covering the entire state were not "provisions of the agreement" without assessing whether those actions constituted reasonable efforts would render the final part of subsection (12) meaningless. *See Goode*, 830 So. 2d at 824.

Moreover, failing to consider whether Micro Man devoted reasonable efforts and resources to the distribution and sale of Stiegl would be inconsistent with the legislative intent governing the conduct of distributors. Considering only whether sales to Publix and full coverage of the state were material provisions of the agreement would not address the Legislature's concern of "[a]ssuring the manufacturer and the public of service from a distributor who will devote reasonable efforts and resources to sales and distribution of the manufacturer's products." § 563.022(1)(b)(2).

Conversely, applying *only* subsection (12), to the exclusion of subsections (6), (7), and (9), as Glunz Beer urges, would be inconsistent with the legislative intent stated in subsection (1)(b)(1). If only subsection (12) applied in franchises without agreements, and importers were not bound by the termination provisions of subsections (6), (7), and (9), importers could terminate a franchise for any reason, at any time, and in bad faith, simply by arguing that the distributor had not devoted reasonable effort and resources to selling the product. Such an action would violate the Legislature's

12

intent to ensure that "the beer distributor is free to manage its business enterprise." § 563.022(1)(b)(1).

Because Micro Man has failed to address whether it devoted "reasonable efforts and resources" to the distribution of Stiegl, and genuine issues of material fact exist on the question in any event, Micro Man is not entitled to summary judgment on the question of "good cause" under subsection (7)(a).

### 1.      *Good Cause under § 563.022(7)(b).*

The second element required for good cause is that the importer "first acquired knowledge of the failure described in paragraph (a) not more than 18 months before the date notification was given to subsection (6)." § 563.022(7)(b). Micro Man argues that Glunz Beer has known since 2002 that Micro Man did not sell to Publix and did not cover the state, and therefore Glunz Beer's decision to terminate the franchise fell outside the 18-month window.

As Glunz Beer correctly argues, the franchise at issue in this case did not begin until April 15, 2012, when Glunz Beer reacquired the right to import Stiegl to Florida after a three-year hiatus. Dkt. 12-1 ¶ 14. Micro Man argues that the parties' previous franchise agreement, from 2002 through 2009, should be taken into consideration when determining the date on which Glunz Beer acquired notice of Micro Man's purported failures to satisfy provisions of the agreement. Micro Man points to no authority or statutory language, however, allowing consideration of previous franchises in determining whether "good cause" exists for termination or non-renewal of the current one. Indeed, a more reasonable construction of § 563.022 applies the notice provision to only the current franchise agreement. Otherwise, importers could terminate distributors for violations of provisions that only existed in prior franchise agreements, and distributors could argue importers had notice of

13

deficiencies not contained within prior franchise agreements. Because the statutory notice was sent less than 18 months from the beginning of the franchise at issue in this case, the notice was timely under subsection (7)(b) as a matter of law.

### 3.   Conclusion.

While Glunz Beer's statutory notice was timely as a matter of law, there remain genuine issues of material fact as to whether Micro Man devoted "reasonable efforts and resources" to the distribution of Stiegl in Florida under § 563.022(12). Micro Man is therefore not entitled to summary judgment.

### B.   Glunz Beer's Motion for Summary Judgment

Glunz Beer seeks four determinations on summary judgment: (1) Section 563.022 imposes obligations on a beer distributor to use commercially reasonable efforts to sell beer throughout its entire exclusive territory and to use due diligence and reasonable efforts in the expansion of the market and the promotion of the product; (2) Glunz Beer had "good cause" to terminate Micro Man's franchise; (3) Glunz Beer acted in good faith in terminating Micro Man's franchise; and (4) Glunz Beer is entitled to prevail on its Counterclaim for attorneys' fees and costs. Because the first determination is inconsistent with Micro Man's statutory obligations and the final three are dependent on material facts that remain in dispute, the motion is due to be denied.

Glunz Beer first argues that it is entitled to the following ruling on summary judgment:

> [T]hat § 563.022, Fla. Stat. . . . and the Uniform Commercial Code, § 672.101, Fla. Stat. *et seq* (the "Code") impose obligations on a beer distributor to use commercially reasonable efforts to sell beer throughout its entire exclusive territory, and to use due diligence and reasonable efforts in the expansion of the market and the promotion of the product, even if the absence of a specific written agreement between the supplier and distributor.

Dkt. 46 at 3. While § 563.022(12) imposes on a beer distributor the obligation to "devote reasonable efforts and resources" to the distribution of the product in the absence of a written agreement, the ruling sought by Glunz Beer takes that provision too far. The statute does not expressly require beer to be sold throughout the entire exclusive territory or require distributors to expand the market or promotion of the product. Rather, the distributor's obligations are limited to devoting "reasonable efforts and resources." § 563.022(12). Whether "reasonable efforts" required Micro Man to sell throughout its territory and expand its market and promotion of Stiegl is a question of fact for the jury to determine at trial. *See WrestleReunion, LLC v. Live Nation Television Holdings, Inc.*, No. 8:07-cv-2093-JDW-MAP, 2009 WL 2473686, at \*9 (M.D. Fla. Aug. 11, 2009) (Whittemore, J.) ("Whether these efforts were reasonable under the circumstances is an issue of fact to be determined after the presentation of evidence at trial."); *Scheman-Gonzalez v. Saber Mgf. Co.*, 816 So. 2d 1133, 1139-40 (Fla. 4th DCA 2002) (issues of reasonableness are generally "questions of fact which are best left to the jury"). *Cf. Whitby v. Infinity Radio Inc.*, 951 So. 2d 890, 897 (Fla. 4th DCA 2007) ("Whether a non-compete convenant is reasonable . . . is a question of fact for the trial court."); *Cocoa Props., Inc. v. Commonwealth Land Title Ins. Co.*, 590 So. 2d 989, 991 (Fla. 2d DCA 1991) ("Since the question of reasonable time is a question of fact which depends upon the situation of the parties, the nature of the transaction, and the facts of the particular case, . . . a material issue of fact remains in this matter.").

Glunz Beer next argues that it had "good cause" to terminate Micro Man's franchise. As explained *supra*, "good cause" requires Glunz Beer to meet five elements, the first of which is the failure by Micro Man to comply with a provision of the agreement. § 563.022(7)(a). It has already been determined that Micro Man's obligation to devote reasonable efforts and resources is a

provision of the agreement. The commercial reasonableness of Micro Man's efforts is a question of fact, and a genuine issue of material fact therefore remains on the first element of good cause, precluding summary judgment.

Glunz Beer also argues that it is entitled to summary judgment on the question of good faith. *See* § 563.022(6)(b). Good faith, however, is "generally an issue of fact which precludes summary judgment." *Lees v. Pierce*, 648 So. 2d 839, 841 (Fla. 5th DCA 1995) (citing multiple Florida cases in support); *see Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1275 (Fla. 2000) (Good faith and bad faith decisions of insurers "usually are issues of fact to be determined by a fact-finder."). The evidence, taken in the light most favorable to Micro Man, raises a genuine issue of material fact on the question of good faith, also precluding summary judgment.[7]

Finally, Glunz Beer argues that it is entitled to partial summary judgment on its Counterclaim. Specifically, Glunz Beer seeks an award of attorneys' fees under § 563.022(18)(c).[8] Because it has not been granted summary judgment on any of its claims or defenses, however, a ruling on attorneys' fees is premature.

---

[7]Glunz Beer argues that *State Distributors, Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405 (10th Cir. 1984), and *R.L.M. Dist. Co. v. W.A. Taylor, Inc.*, 723 F. Supp. 421 (D. Ariz. 1988), compel the conclusion that Glunz Beer acted in good faith as a matter of law. Those cases dealt with the New Mexico and Arizona franchise laws, however. Furthermore, in those cases, the courts had the benefit of factual findings after receiving evidence at trial, which led to determinations, as a matter of law, that the termination of the franchise was in good faith. Here, taking the evidence in the light most favorable to Micro Man, genuine issues of material fact exist as to whether the termination was in good faith.

[8]"In addition to temporary, preliminary, or final injunctive relief, any person who shall be aggrieved or injured in his or her business or property by reason of anything forbidden in this section may bring an action therefor in the appropriate circuit court of this state and, if successful shall recover the damages sustained and the costs of such action, including a reasonable attorney's fee." § 563.022(18)(c), Fla. Stat.

Accordingly, Plaintiff's Motion for Partial Summary Judgment (Dkt. 39) and Louis Glunz Beer, Inc.'s Motion for Summary Judgment (Dkt. 49) are **DENIED**.

**DONE AND ORDERED** this 7th day of August, 2014.

*/s/ James D. Whittemore*

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record

17